wants to come on up. Mr. Byrne, when you're ready, take your time. We're glad to hear from you. Thank you. May it please the court, my name is Jonathan Byrne. I'm here on behalf of Desmond White. This morning I want to focus on the armed career criminal issue that was raised in our supplemental briefs. If time permits, I'll turn to the Fourth Amendment issue. Of course, if your honors have any questions about either issue, I'm happy to try and answer them. The armed career criminal issue that was raised in the supplemental briefs is one that this court can and should resolve. It is an issue that was presented in as timely a fashion as it could have been. And if there is, there are several reasons why the court The trial here occurred after our decision in Davis, is that right? The guilty plea, yes, your honor. Guilty plea, whatever happened in the district court. So Davis was out there when this case was decided in the district court. Yes, your honor, I think so. Okay. Was there ever any discussion in the district court about the predicate offenses fitting the generic definition of burglary? No, your honor. Okay. As you indicated, Davis was in place at the time that Mr. White was sentenced. Also, of course, the Supreme Court had already announced twice in James and Sykes that the residual clause of the Armed Career Criminal Act was not unconstitutionally vague. So when the court decided Johnson last June, it really changed the playing field when it comes to these ACCA predicates. It removed this backstop that courts have used for years when analyzing these predicate offenses. So where you had a situation where you had a prior offense that was very much similar to one of the listed offenses, but not quite the same, the court always had that residual clause to go to and say, it's close enough and the same concerns that animated the inclusion of the listed offense apply to make it count under the residual clause. Is this your argument on forfeiture and waiver? Yes, your honor. Okay. Is it a question of forfeiture? Well, I don't think. Well, it certainly is not a question of waiver. Because a waiver requires a knowing and intelligent and affirmative sort of act, and we didn't have that because there was nothing to waive at the time. Yes, I think it falls under the rubric of forfeiture, and then it's something that this court can review for plain error, which has been our position from the beginning. If there is any waiver as it relates to this, it belongs to the government and not Mr. White, because when Mr. White filed his motion to file a supplemental brief, we contacted the government, asked if they had any objection to the filing of that motion. The government said they did object. We put that in the motion. And then when this court asked the government for a response, the government changed its mind and said we're withdrawing that objection. And this court has recognized that a party that identifies an issue, raises an objection, and then withdraws it has waived that issue. So is your argument essentially that we could have raised a Johnson argument below we didn't because there was no Johnson argument to make at that time, and therefore we're now entitled to make it since Johnson occurred between the time of sentencing and direct appeal? Yes, Your Honor. I think it falls exactly in the same procedural posture as the Durham case from the 11th Circuit, where the court there actually changed its practice to allow these types of claims and did so not only with the government's acquiescence but at the government's urging. And so I don't think there's any reason for this court to refuse to deal with the substance of the issue. If you win on Johnson, you still have to win under Berkley, right? Well, yes, there's the substantive issue of whether the burglary counts, Your Honor, absolutely. Obviously we hope you reach that and agree with us on that. And I'll pivot to that at this point. Burglary in West Virginia requires the breaking and entering or the entering without breaking of what is called a dwelling house. And then dwelling house is defined by a statute to include a whole lot of things that do not fit into the generic burglary definition of tailor, which is limited to buildings or structures. As I understand the West Virginia statute that's issued here, it would include an RV in your driveway. Yes, Your Honor. It includes a self-propelled motorhome. Well, I don't have one. Judge Wynn may have one in his driveway. Yes, Your Honor, and I think it's also important to note that the dwelling house definition is not exclusive. It's inclusive. It says it includes at least these things. It doesn't actually involve a home, the definition does. So it obviously is going to range even more broadly than the things that are laid out. But self-propelled motorhome is one of the things that is specifically listed in there. And that, of course, takes me to this Court's decision in Henriquez, which involves Maryland burglary statute, which is very similar. It uses the phrase dwelling of another instead of dwelling house. And instead of having a statutory definition, the courts have filled in that definition in the State of Maryland, and they have concluded that dwelling of another includes a recreational vehicle. And this court rejected the government's arguments to narrow that definition to make it fit within the generic burglary definition from Taylor and said this is not a categorical armed criminal offense. McLeod, which came out after we had filed all of the briefs in this case, is a similar situation with South Carolina and also very recently in the Southern District of West Virginia in the Treadway case. Judge Berger came to the conclusion we're asking this court to reach with regards to the West Virginia offense of burglary, and she mentioned in making that ruling that she has a lot of experience with the West Virginia burglary statute. She was a state court trial judge for years. That's why I think the West Virginia statute clearly sweeps more broadly than Taylor and so doesn't fit under the generic definition of burglary. Seeing as how the issue was not raised below, we have to meet the plain error standard, I would say that we've shown that there is the error here because the West Virginia burglary statute doesn't qualify as a violent felony. The error is plain. It was based on the law as it is now. Without the residual clause, there's no sort of backstop for including it in that definition. Obviously, Mr. White suffered prejudice because he was subject to a maximum 10-year sentence by virtue of his offense of conviction, but the ACCA designation allowed him to be sentenced to the 180-month, 15-year sentence that he got. And finally, this is the kind of error that the court ought to notice in a plain error setting. The court said in Boykin, which involved an improper arm career criminal designation, that that's the type of error that cries out for relief even under the statute. You're asking us to send it back to the district court to apply the modified categorical approach here? Well, that would be one solution, Your Honor, because, of course, there was no analysis done below whatsoever. I think we would ask the court to hold that the West Virginia statute is not categorically a burglary under the generic definition. It could fit that definition depending on what Shepard-approved documents the government could produce at sentencing, and since this wasn't an issue, we don't really know what those are in this case. And, of course, regardless, Mr. White would need re-sentencing. The district court never had the opportunity to address the burglary issue in the first instance. Would we determine that since Johnson eliminates the residual clause, would we send it back to the district court to determine the West Virginia legal question in the first instance, or are you asking us to determine that as a matter of law here? I think the court can determine that as a matter of law here, that at least in some instances the West Virginia burglary statute does not qualify, that there may be some Shepard-approved documents that would make a particular offense qualify. I think that would be something that the district court would have to do as a first instance simply because we don't have any evidence in the record. Well, wouldn't the district court be who would decide in the first instance whether the categorical or modified categorical approach applies? Even if we decided that the West Virginia statute was not generic burglary, if they decided in this case that the categorical approach was required, then that would end it. Only then would you go on if they decided the modified approach was required. That's when you would get into additional Shepard evidence. Yeah, sure. I think that's right. I think what we are asking the court to do is to say that this doesn't present a generic offense and then remand for those proceedings. I think that would be... Are you saying that there's already Fourth Circuit precedent that a motorhome or self-propelled motorhome is outside of burglary as Taylor contemplates? Yes, Your Honor. What is that? Enriquez is... Enriquez involved the Maryland statute, right, which was interpreted by Maryland case law. Yes, Your Honor. And the court held that because the Maryland case law was broad that the statute could be contemplated to encompass more than what Taylor allowed. Would you agree with that? Yes, Your Honor. But didn't the court also speak to things like... because it included things like boats, tents, things like that? In other words, what I'm asking is what was the holding of Enriquez? I'm not sure I understand Enriquez to hold that motorhomes or self-propelled homes don't fall within burglary. I thought Enriquez held that the Maryland statute is overbroad because of the judicial interpretation, which is not capable of being reduced, if you will, under the modified categorical approach. Well, I think, Your Honor, the holding was more generally that the Maryland statute is broader than the generic burglary definition. And I think one of the examples as to why that the court gave, because it was specifically something that the Maryland courts had found, was that the recreational vehicles are part of that definition. And although I think the courts in Maryland probably have swept more broadly than the West Virginia statute does, that doesn't keep the West Virginia statute from also being broader than the generic definition from Taylor. I'm sorry. So I'm trying to get to how the trial judge's error, if reviewed for plain error, how it was obvious. I think it has to be clear or obvious. I can see how you have an argument, and I can see how Enriquez enhances your argument. But explain to me how it meets the standard of plain error. Well, I think, Your Honor, because the West Virginia definition clearly sets out things beyond the structure or building limitation in Taylor. The West Virginia definition takes a bunch of different things that aren't structures but includes them in the definition of burglary because people may or can live there. And if you look at the decision in Grissel, which is the Ninth Circuit case, which involved the Oregon statute, it talked about how Taylor rejected the idea of defining the places that are protected by a burglary statute based on their use as opposed to what they actually are. That opinion was reversing its prior opinion in Stevens. Yes, Your Honor, it was. But then you have a Tenth Circuit case, do you not? Is it Tenth Circuit case Spring? Yes, and Spring was based on the Ninth Circuit case that was overruled later by the En Banc Court. Spring would go the other way, though, right? It would, but I think that's a good example of where the courts are going to be different now after Johnson. Because if you look at Spring, what it says is, or Spring actually relying on the earlier Ninth Circuit case, what it says is we have a definition here that's close to the generic definition of burglary, but it's not quite on. But because it involves places where people live, these extra places, the protection of them are animated by the same thing that made Congress include burglary in the list of ACCA predicates in the first place. And even though they don't say it's a residual clause argument, that's a residual clause argument. Because they're saying even though this is not quite the same thing as a structural rebuilding, the same concerns are present. And that's an analysis, A, it's an analysis that the court that originally did it has rejected, and B, I think it's an analysis that courts should reject now in the wake of Johnson, even if it wasn't done specifically in terms of the residual clause. There's no Fourth Circuit case that specifically addresses self-propelled motorhomes or RVs as being outside the generic Taylor definition. There are cases that have found statutes that include such things to be overbroad, whether it is because that is the only part of it that's overbroad or it's merely an example of the overbreadth. I don't think you can say based on those decisions. Aren't there two unreported cases from this court? There are, Your Honor. They're old. They are before 2007, which is when the local rules of this circuit say citation of those cases are disfavored. If you look at them, you can see why. They're very brief.  They don't provide a lot of analysis. And they're also pre-Shepard cases, so we don't know what information the courts were relying on there in reaching their decisions. And they were pre-Harenkis? Yes. Yes, Your Honor. You know, with the Harenkis case, which actually had a dissenting opinion too in it, the issue was shopping to at least the extent that the court indicated that it was not limited to those indications there. Yes, Your Honor. Thank you, Mr. Byrne. Thank you. You've got some rebuttal time. Ms. Harreld? Thank you. May it please the Court, my name is Jennifer Rada Harreld, and I'm an Assistant United States Attorney for the Southern District of West Virginia. Today I would ask this Court to both affirm the District Court's denial of the suppression motion and also to affirm the sentence under the Armed Career Criminal Act. Our folks primarily are in the Armed Career Criminal Act, as the Fourth Amendment issue was not addressed previously in an oral argument. With regard to the abandonment issue, the government has set that forth in its brief. To the extent that an argument is neither raised in the District Court nor in an opening brief is deemed abandoned by the Fourth Circuit. The defendant attempts to couch the supplemental brief in terms of Johnson. However, this is not truly a Johnson case. We are still dealing, even assuming the residual clause is gone, and assuming that the predicate offenses cannot come in under the residual clause, we still have Taylor and we still have the generic definition of burglary. That definition from Taylor has been available since 1990. There is extensive case law throughout the country since 1990 dealing with whether specific burglary statutes fall within that generic definition. If Johnson was the only reason that we were here, the abandonment issue would not be here. But Taylor and that definition has been available, and it was available at the time of sentencing, and it was available at the time of the defendant's opening brief. Well, was there any discussion in the District Court? I think I asked the opposing counsel the same question. Any discussion in the District Court, pre-sentence report, anything that dealt with generic burglary? No. There was actually the pre-sentence report simply listed there are four predicate offenses, listed the four offenses, did not cite the specific clause under which they came in, and there was no objection by the defendant to that application of the Armed Career Criminal Act at all. So the specific reason that those offenses came in was never discussed at any point in the District Court. Well, since the Davis case was out there at the time, would it be reasonable to assume that the court and your office and the probation office and the defense counsel were all proceeding under the assumption that it was the residual clause that covered this? Davis addresses a separate statute under West Virginia law. Davis addressed the breaking and entering statute of 61-312, and that statute is significantly different than the burglary statute in question here. It includes the, it explicitly addresses breaking and entering into locations such as underground coal mines, railroads, traction cars, steamboats or other boats or vessels, area of public utilities that is enclosed by a fence. It clearly falls well beyond Taylor, and it's substantially different than the burglary statute under which the defendant was convicted, which addresses dwelling house. And dwelling house, while it does have a definition that is inclusive, it creates a list of specific items. That would be mobile homes, house trailers, modular homes, factory built homes, which are all essentially homes, and they are places where many individuals in West Virginia live full time. It does include the self-propelled motor home. But also 61-312, which was addressed in Davis, actually includes, and this was not actually addressed in the Davis decision because this clause of that statute was not relevant in that case, but it includes a misdemeanor breaking and entering statute that addresses the breaking and entering into any automobile, motor car or bus. The fact that that is a misdemeanor addressing automobiles, motor cars, and buses would indicate that clearly those items are not included in the burglary felony because those items are clearly substantially different than those items that are specifically listed under the dwelling house definition. And because this statute, the breaking and entering statute, is so significantly different, while obviously everyone was aware of its existence, certainly the U.S. Attorney's Office did not feel that Davis would render the 61-311 under which the defendant was listed. Well, is the burglary of an RV sitting in somebody's driveway fit within the generic Taylor definition of burglary? The United States believes that it does. It fits substantially within that, or at least this specific statute. It has the RV component in this statute. But if you look at the statute as a whole, it substantially complies with the definition of Taylor, and that is what Taylor stated. Taylor specifically referenced that it needs to correspond in substance. And the West Virginia statute, while it does include an RV, it includes a very narrow list of items. And when looking at an RV, particularly in light of that list of items in the dwelling house definition, compared to other statutes that have listed enumerated locations, the RV is clearly much more similar to a residence, to a house, to a mobile home that is moved into a location but kept as a permanent residence. Including it in that list implies that that is something that is closer to a home and fits what Taylor was envisioning. It's different than an automobile, a sedan, a tent, a boat. It is something that is in... Is it really different from a car? I mean, you can drive both down the street at your leisure. The difference that is important in this case is the very reason that burglary was included as an enumerated offense, and that is the risk of violent confrontation when an individual engages in a burglary of a residence. That is particularly a viable concern in an RV. There is a separate sleeping area in most RVs. There's a kitchen. It is a fairly large area. And when someone is breaking into an RV, it's impossible to tell who is in that vehicle, who is in... What about a houseboat? A houseboat... Sounds like you just described one right then. Well, luckily for West Virginia, houseboats are not actually included in the definition and would clearly fall within the Davis statute. I'm not following the rationale. I'm just following the same kind of rationale. I don't see how your definition is differentiated in that case. The definition, looking at the concern, and since we are concerned specifically with the West Virginia statute, but the houseboat argument would obviously create a very... But we're looking at the generic definition in light of the statute. In light of Henriquez, if the statute included a houseboat, the United States, I believe, would make a similar argument,  Does it include the mobile home? Does the West Virginia statute include a mobile home? The West Virginia statute does include a mobile home, which a mobile home has no wheels, has no motor. It is simply a mobile home that is placed in a trailer park. It's placed on a foundation.  Yes, a self-propelled motor home. I thought you said motor homes. Oh, I'm... We have mobile homes and motor homes, so I apologize. That's my southern accent coming out. Yes, a motor home... A motor home does have a vehicle that is movable, or does have a motor that is movable like a vehicle. But the risk that Taylor was concerned with, the risk that Congress was concerned with, when you break into someone's Corolla, you can see whether there's an occupant. There is less risk of a surprise violent altercation. When you break into someone's RV, that risk is just as present as it would be in a regular residence. Would you say that some self-propelled motor homes are Taylor dwellings and some are not? I would, Your Honor. That there could be a circumstance where a motor home possibly fell outside of the NARA definition of Taylor. The West Virginia statute, I think, says self-propelled motor home used as a dwelling regularly or only from time to time. Is that right? Correct. So let's take the only from time to time. Would you say that is a Taylor dwelling? It would be a much closer call on that circumstance. And there have been cases that look at, for example, the intermediate court in Maryland that was dealing with this. I'm sorry to interrupt you, but before the thought escapes my mind, let's assume for a minute that it's a self-propelled motor home only from time to time. How would that be charged in West Virginia? Would that still be charged as a self-propelled motor home? So that the statute would be, even if it's modified categorical, would still include some things that would not be Taylor dwellings? As far as how the state would charge it in the indictment? Isn't that the issue that would get it to modified categorical? The indictment would be one issue that could get it to modified categorical, but also the discussion of other Shepard-approved references include a complete home. But the statute has to be divisible to satisfy Taylor, does it not? It does. And so how do you divide self-propelled motor home if it's charged as such? Your state prosecutor is probably just going to charge motorized home. It's not going to make any difference to the state prosecutor for state crime purposes, is it? The future prospect of a later federal crime that would be punished. It would be hard to know what would be in their mind, but it probably would not be in the forefront of their mind whether this is going to fall under the armed criminal statute later. Can it conceivably be charged in a way that would satisfy Taylor, given your acknowledgement, which I appreciate that there are some self-propelled motor homes that are not going to qualify under Taylor? Yes, it could. And how would that happen? If the indictment or any other Shepard-approved documents clearly made reference to the nature of that self-propelled motor home, if it was described, and this is a situation that was in the Maryland Intermediate Court, a self-propelled motor home that had been stationed in a motor home park for several weeks was hooked up to external utilities. If that kind of explicit information was included in either the plea colloquy, the indictment, or any other Shepard-approved documents, that would provide the court with the ability to apply the modified categorical to determine that, yes, this situation under the modified categorical does fall within the Taylor generic definition. But you're relying on facts, but don't we have to find a statutory definition that suffices so it would have to be under the phrase regularly in the statute, is that right? That is, that it's used as a dwelling regularly. Charging it with the regularly would be a must. In other words, there's got to be a violation of the statute, and it has to be a self-propelled motor home, and it has to be a dwelling, and it has to be regularly or from time to time, right? Yes, Your Honor. It doesn't just have to be a self-propelled motor home because the statute says, shall include, but is not limited to. This is a non-exhaustive list that this West Virginia statute is addressing, is it not? You're correct, Your Honor, and that is where you look to. How do you limit it just to what you have right here in the statute? It says it doesn't include a houseboat, for instance. All the characteristics of a houseboat seems to match just what you described this RV to be. Well, Your Honor, and that is where it's important to look to other statutes. There is the West Virginia statute that was addressed in Davis, which specifically does address all boats and vessels, and the fact that a boat is specifically included in a different burglary provision, breaking and entering is the way it was referred to, but with otherwise the same elements, it is reasonable to infer that the non-exhaustive list does not include things that were otherwise codified and addressed in a separate statute. But when we're looking strictly at the statute, it's looking pretty clear to me. It's telling us right then this is a non-exhaustive list, and we don't know what else is there, but it certainly has to have the characteristics of this, but it doesn't necessarily have to be one of these and could be a houseboat. I mean, that's arguable. I can understand that point of view, but it seems to be clear to me. And you mentioned, of course, we're not at the point of dealing with the modified categorical approach, but I was concerned in terms of the way you addressed that, because it goes to the element and alternative elements here, and I'm just not sure that if it goes back to modified categorical, the question is really whether it's a dwelling or an outhouse, because that's the divisibility of the statute. Is that right? I mean, you don't get into a minute trial with Shepard documents. Correct, Your Honor. Looking at the McLeod decision, which did apply a modified categorical and approved a modified categorical to be used for the South Carolina statute, an issue there, that South Carolina statute was very similar to the West Virginia statute in that the statute itself was very broad. It was the breaking and entering of a building. With alternative elements. The South Carolina statute defined building, and then the issue was there was a definition of building. It was separately defined, which I believe that was where the issue lay as to the concern about whether it fit the generic definition tailored, was this definition of building, which included four different alternatives, a structure, vehicle, watercraft, or aircraft. That was the definition of the South Carolina statute, and the modified categorical was approved in that to determine whether or not the generic definition applied, and it appears that that was based upon the fact that a structure would fit within Taylor, but an aircraft would not, and the United States believes that that similar list of we have a generic definition that if you look at the generic definition by itself without the definition of a specific term, clearly falls within the generic definition of Taylor, the basic West Virginia statute.  In McLeod, that list was what was the modified categorical, was to determine whether or not what happened in McLeod fell within an appropriate structure. Was that an exclusive statute, the South Carolina statute? It was exclusive, but it did include specifically things that clearly fell outside the scope. But the list here is not exclusive. It is not specifically exclusive, Your Honor. Specifically and nonspecifically. It says include, but you'll not be limited to. That's about as non-inclusive as you can make it. When looking at it in the absence of the other West Virginia statutes, that is true, Your Honor. So could a tent fit under that definition? If viewed in a vacuum, then arguably it could. Viewed as not being limited to this list right here, you mean. It could. It could. If you do not look at the other West Virginia statutes to get an idea as to what is included in that. Well, is a tent included in any of the related West Virginia statutes, if you know? I do not believe a tent is specifically addressed anywhere in the West Virginia statute. Okay. Anything else you want to share with us today? In my brief remaining time, I would like to address the plain air standard briefly. In this case, whether or not there is air, it cannot be said to be plain, given the state of the law at the time of the sentencing and at the instant moment. Johnson does not render. You're saying this argument could have been made before Johnson? Whether or not the West Virginia statute fell within the generic burglary definition. It wouldn't have been frivolous under Davis. If it was frivolous, then we wouldn't have any other. We wouldn't have the vast nature of the Taylor cases that interpret Taylor. We have that for numerous statutes. Davis addresses a statute that clearly. The case is in the Fourth Circuit. Davis. Yeah. Davis does specifically address. Follow Davis. We don't have a choice on that. Whether we like it or not. Davis was there. Davis was there. Like now, Enriquez is there. You have to follow that. Whether you like that or not. Correct. Your honor. And those both address separate statutes that had different elements and different terms. This specific West Virginia statute had not been addressed by the Fourth Circuit, except for two unpublished cases, which both held that it fell within the generic definition of Taylor. It would have been a tough role for a defendant to get up and make that argument in light of Davis. You'd have to basically say, Noah Davis, I think. And that would argue that their failure to raise it should not be deemed abandoned. But regardless, it still is under a plain air standard. And looking as to whether this error was plain and obvious at the time, it cannot be said that it was plain and obvious at the time or at the present state of the law. What's the end result? If the best case scenario for the defendant on this type of case, it goes back in terms of the sentencing aspect of it. How would the sentence differ without this? Without the ACCA. To the extent that it is found that the arm for criminal act does not apply. The stash for maximum will be 10 years as opposed to as opposed to 15 year mandatory minimum. So you're talking about a difference of five years here. Yes, Your Honor. And the United States would not argue that it does not meet the third and fourth prongs of plain air. Obviously there would be prejudice to the defendant. What the United States is focusing on are those first two prompts, whether there's air and whether it can be deemed plain. And both of those must be back. But if it goes back on a modified categorical approach, then there'd be a resentencing, would there not? There would be an assessment as to whether or not, I've come out of time, may I finish? There would be a reassessment as to whether or not the defendant's specific convictions fell within the Taylor generic definition. And there would be a resentencing based upon that. But that would depend on whether his specific convictions fell within that modified categorical. So it's entirely possible that he would still receive a 15 year sentence. Well, if we were to decide here that under the categorical approach, the burglary did not fit, would we necessarily have to decide whether the modified categorical approach was also applicable? Applicable generally or to the specific defendant? To the specific defendant. No, Your Honor. That would need additional factual findings that are simply not in the court. But if the modified categorical approach can be applied, it would need to be remanded to have that examined. All right. Thank you very much. Mr. Byrne. I have some other things to tell us. Just a couple of quick things, Your Honor. I think it's important when talking about what Taylor did in the Taylor generic definition of burglary that we remember that initially Congress defined burglary in ACCA. But that definition was not there when Taylor was decided, obviously. That's why it had to be decided. But the court, in coming up with the generic definition of burglary, went back to what was burglary at old common law, breaking and entering a dwelling at nighttime. It was very restricted. The court recognized that states have broadened that to include breaking and entering at other times, to include entering without breaking, and also to include more places that are protected, aside from the old definition. The court specifically sort of took a middle path on that, and they chose structure or building as the protected place and recognized that there are states that these burglary statutes include vehicles and that those will fall outside of this definition. And so I think that is what we have with the West Virginia statute, because for all the government wants to talk about the definition of people living in places, the state can define the dwelling house as where anybody lives. But the definition of burglary in Taylor is a place or a structure. Taylor would cover this building. The West Virginia definition would not, assuming no one lives in the building. I'm making an assumption. With the West Virginia statute we have here, it includes a tent, somebody living in a tent. Does that, as a matter of law, take it outside of generic burglary? I think that would, because I don't think that would qualify as the type of permanent structure that Taylor had in mind. But certainly I think vehicles like a motor home certainly do. To follow up on the question about state charging that Your Honor brought up, based on my experience, and part of my experience is the information that Mr. White pled to in this case, which is not in the record, but we have it in our file. Language generally tracks the statute, and the statute says dwelling house. If it's not in the record, then we probably don't want it. Right, and that's why I raised that caveat. But in my experience with West Virginia charging instruments, they generally track the statute. They do not get down into the weeds of the specifics of the statute. They really don't have a reason to. What's that? They really don't have a reason to. That's correct, Your Honor. And there is, at this point, a case pending in front of the Supreme Court, Mathis, which actually deals with the situation of statutes like this that lays out an element and then separately defines what that element is. And there's a question as to whether the modified categorical approach can go that far. But obviously, we're not quite at that point yet. If there aren't any other questions. Thank you all very much. Thank you, Your Honor. We'll come down and greet counsel, and then we'll take a very brief recess.
judges: G. Steven Agee, James A. Wynn, Jr., Thomas D. Schroeder